## IN THE UNITED STATE BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| IN RE:   JAVIER DIAZ | ) | Case No. 13-10766 |
| ELISA DIAZ | ) | |
| Debtor(s) | ) | Judge Janet S. Baer |

### *NOTICE OF MOTION AND CERTIFICATE OF SERVICE*

| Javier and Elisa Diaz | Stephen J Costello | Dana O'Brien |
|---|---|---|
| 425 Porter Court | Costello & Costello | McCalla Raymer Leibert Pierce LLC |
| Elgin, IL 60120 | 19 North Western Ave, Rt 31 | 1 N Dearborn, Suite 1200 |
| | Carpentersville, IL  60110 | Chicago, IL 60602 |

Please take notice that on January 11, 2018, I have filed this Response to Creditor's Sur Reply which will be heard on February 1, 2019, at 10:00 AM, by the Honorable Judge Janet S Baer at the Kane County Courthouse, 100 S 3rd Street, Courtroom 240, Geneva, Illinois 60134.

I certify that this office caused a copy of this Response to be delivered to the above listed person by depositing it in the U.S. Mail at 801 Warrenville Road, Lisle, Illinois 60532, and to all other parties electronically via the Court's CM/ECF system on January 11, 2018.

/s/ Pam L. Peterson_____
For Glenn Stearns, Trustee

_____

### RESPONSE TO SUR REPLY FILED BY FAY SERVICING LLC IN REGARD TO DEBTOR'S MOTION FOR DETERMINATION OF FINAL CURE AND MORTGAGE PAYMENT RE: RULE 3002.1

NOW COMES Glenn Stearns, Chapter 13 Trustee and in his Response to Fay Servicing LLC as servicing agent for Wilmington Savings Fund Society's Sur-Reply states as follows:

## FACTS

1. On March 18, 2013, the debtors filed a petition under Chapter 13.

2. Steven Costello of Costello and Costello filed this case on behalf of the debtors.

3. On May 16, 2013, the Amended Plan Filed on May 10, 2013, was confirmed.

4. The Terms of the confirmed plan are $628.00 per month for a term of 60 months, with a dividend of 11% to the General Unsecured Creditors.

5. Section E3.5 of the confirmed plan provides for an arrears claim of $18,922.20 payable monthly to creditor Wells Fargo Bank.

6. Wells Fargo Bank filed their Proof of Claim 4-1 on May 9, 2013, for an arrears amount of $18,922.20.

7. On June 14, 2013, the Trustee began disbursing payments to Wells Fargo Bank on their arrears claim.

8. On September 17, 2013, the Trustee received a letter from Wells Fargo Bank, dated September 12, 2013, stating, *"This letter is our formal notice that the above referenced loan has been paid in full. Please do not forward any additional payments on this loan, as any additional funds received will be returned to your office."*

9. On September 17, 2013, the Trustee stopped payment on Wells Fargo Proof of Claim and adjusted the amount the Trustee had disbursed, a total of $270.48.

10. On October 11, 2013, the Trustee began disbursing payments to the general unsecured creditors due to the paid in full letter from Wells Fargo Bank dated September 17, 2013.

11. On October 14, 2014, the Trustee completed an audit of this case and the percent to the unsecured creditors was adjusted to 58.47047% for the 60 month plan base of $37,680.00.

12. On October 24, 2014, a Dividend Adjustment Notice was sent to the debtors and the debtors' attorney which disclosed the following information: the 60 month plan base amount of $37,680.00; the total paid in to the plan by the debtors at that time of

$11,176.00; the base balance of $26,504.00; and the *estimated percent to unsecured of 58.4703%.*

13. Every six months beginning November 2013, the Trustee sent periodic reports to the debtors and their attorney.  These reports indicated that no money was being sent to Wells Fargo Bank or Citibank or Wilmington Savings Fund Society FSB for arrears.

14. On November 27, 2013, a Notice of Transfer of Mortgage Claim was filed transferring Wells Fargo Proof of Claim 4 to Citibank, N.A, as trustee for CMLTI Asset Trust.

15. On May 12, 2014, a Transfer of Claim Other Than for Security was filed transferring Citibank, N.A. Claim No. 4 to Wilmington Savings Fund Society FSB.

16. On September 8, 2016, a Transfer of Claim Other Than for Security was filed transferring the Wilmington Savings Funds Society, FSB, Claim 4 to Fay Servicing, LLC as servicing agent for Wilmington Savings Funds Society, FSB.

## TRUSTEE'S CUSTOMARY PRACTICE

1. The trustee routinely receives paid in full notices from creditors.  This can be money returned with a paid in full note or a letter via facsimile, regular mail or email on the creditor's letter head stating that the loan is paid in full and/or that the creditor doesn't want to receive any further disbursements.  None of the parties to this action is denying that Wells Fargo Bank sent out a paid in full letter.

2. Our office receives an average ten "paid in full" notices from creditors each month.

3. Most of the time the creditor doesn't amend or withdraw their claim or take any other action that would be recorded on the court docket.

4. Since these notices are contrary to the creditor's interest, our office takes these notices at face value and relies on them.

5. Further, nobody is denying that Wells Fargo Bank provided a paid in full letter on this claim.

6. Since our office opened 19 years ago, we have consistently followed the practice of turning off claims based on these paid in full letters.

7. At least one other Trustee's office in our area follows the same practice of relying on paid in full letters to turn off claims.

8. In nineteen years, this is the only instance where we have closed a case, issued the 3002.1 notice, and subsequently learned that the mortgage company was not paid in full.

9. Any reasonable person would have assumed, as the trustee's office did, that there was a loan modification and these mortgage arrears had been paid in full.

10. Turning off claims based on paid in full letters have always been the trustee's practice; and this practice meets our due diligence requirements.

## NO REASON TO QUESTION THE WELLS FARGO PAID IN FULL LETTER

1. The trustee regularly receives paid in full notices from creditors including mortgage creditors.

2. Mortgage creditors routinely send these when there is a loan modification, and they do not want any additional payments from our office.

3. It is common for loan modifications to occur without our office knowing it until the modification is complete and we receive a paid in full/stop making disbursement letter.

4. When our office received the paid in full letter from Wells Fargo, we viewed it as a "loan modification" type of paid in full letter.

5. Our office NEVER thought the entire loan was paid in full.  As a result, we never questioned or objected to the subsequent transfer notices we received.

6. It is not uncommon for mortgages to be transferred to a new mortgage lender/servicer after a loan modification.  Consequently the transfer notices received after the paid in full letter never raised a question in our office.

7. Since our office believed the mortgage arrears had been satisfied through a loan modification, we never considered filing a motion to modify the plan due to additional disposable income, an issue raised in #39 and #45 of the Sur Reply.

8. In addition, our office never received an inquiry from the mortgage company concerning the fact that they were not receiving payments on the arrears.

9. Per the claims register, the loan was transferred to Wilmington Savings Fund Society on 5/12/14.

10. From the transfer date in 2014 until our office closed the case in 2018, Wilmington Savings Fund Society NEVER questioned why they were not receiving payments from our office on the arrears.

11. The creditor is arguing that our office wasn't justified in relying solely on the 2013 paid in full correspondence to turn off the claim while they were not paying ANY attention to whether payments were made on this claim for four years!

12. The mortgage company didn't pay attention to this file for four years and now wants to try to blame the Trustee's office for relying on a paid in full letter provided to us by their transferor, Wells Fargo Bank.

13. Further, the debtor and debtors' attorney receive semi-annual trustee periodic reports.  These reports indicate the names of the claimants the Trustee's office is paying and the amounts paid them.  Neither the debtors nor the debtors' attorney ever questioned why our office was not making payments on the arrears claim.

14. This case was confirmed at $628.00 per month for 60 months with 11% to unsecured creditors; Initially, Wells Fargo was paid pro-rata monthly on its arrears.

15. After we received the paid in full letter from Wells Fargo Bank, we turned off the mortgage arrears claim and increased the amount paid to the unsecured creditors.

16. On October 24, 2014, our office sent a dividend adjustment notice to the debtor and debtor's attorney notifying them that the unsecured percent was increasing to approximately 58%.

17. Even though the debtor attorney may have not been directly aware of the Wells Fargo paid in full letter, he was made aware in writing by the trustee's office of the substantial increase in the percent to be paid to unsecured creditors.

18. Neither the debtor nor the attorney questioned why the trustee's office was increasing the dividend to unsecured creditors from 11% to 54%.

19. The fact that they were silent in regard to this dividend adjustment notice gives even stronger credence to our office being correct in turning off the mortgage arrears claim.

### WELLS FARGO BANK'S LIABILITY

1. Wells Fargo provided our office with a paid in full letter that specifically instructed the Trustee's office not to forward any additional payments of this loan.

2. In fact, it appears the loan was not paid in full but sold or transferred to Citibank, N.A.

3. Wells Fargo did not act in good faith by providing our office with a paid in full letter and then turning around and transferring/selling the loan to another mortgage company.

4. Their action is just another one of their flawed business practices that make the weekly news.

5. The trustee's office should not be held liable for the bad actions or shoddy business practices of Wells Fargo Bank.

6. Wilmington Savings Fund Society and the transferor, Citibank, should seek a remedy against Wells Fargo.

7. This dispute is between Wells Fargo and Wilmington Savings Fund Society, not the Trustee.

### POLICY ARGUMENTS IN FAVOR OF THE TRUSTEE'S CUSTOMARY PRACTICE

1. To correctly and accurately pay claims, the trustee's office needs to be able to rely on paid in full notices from creditors. The correct and accurate payment of

creditor's claims is a foundation of the Trustee's office.  It is essential for Chapter 13 cases to work.  It is essential for the Chapter 13 system to work.

2. Creditors routinely only provide paid in full letters to our office; they do not amend/withdraw their proof of claims or file any pleadings to stop the payments on the court docket.

3. If our office can't rely on these paid in full letters, then our office will have to act as though those letters don't exist.

4. As a result, our office will have to put claims in reserve unnecessarily and turn over large sums of money to the court.

5. The goal of paying unsecured creditors as large a dividend as possible will be greatly impacted by this policy:  our office will be turning over funds to the Clerk of the Court when the creditor is actually paid in full and funds should be being disbursed to unsecured creditors accordingly.

6. The issue at hand is not about collecting in this case; it is about the trustee's ability to rely on written correspondence from a creditor stating that they are paid in full.

WHEREFORE, the Trustee prays that the court grant the debtors' MOTION TO DETERMINE FINAL CURE AND PAYMENT RE RULE 3002.1  and that the mortgage claim on the debtors' residence, represented by a claim filed in this case by Wells Fargo Bank as claim 4-1 on the claims docket in this case, which mortgage claim is now held and/or serviced by Wilmington Savings Fund Society be and it is hereby determined to be fully cured and current in all payments due as of this date and for such further relief as this court deems proper.

Respectfully Submitted,

/s/  Pam L Peterson
For:  Glenn Stearns, Trustee

Glenn Stearns, Chapter 13 Trustee
801 Warrenville Rd, Suite 650
Lisle, IL  60532
(630) 981-3888