# IN THE UNITED STATES BANKRUPTCY COURT
## Northern District of Illinois, Eastern Division

| | |
|---|---|
| **In the Matter of**: } | |
| } | Case No. 13-10766 |
| Javier Diaz } | |
| Elisa Diaz, } | Chapter 13 |
| } | |
| **Debtors.** } | Judge Baer |

### Debtor's Reply to Trustee's Response to Fay Servicing's Sur Reply re Debtor's Motion To Determine Final Cure and Payment Re Rule 3002.1

NOW COMES Javier Diaz and Elisa Diaz (hereinafter "Debtors") by and through their attorney, Stephen J. Costello and in reply to the Trustee's response to Fay Servicing's Sur Reply re the Debtor's motion to determine final cure, state as follows:

### Statement of Facts

1. That Debtors, Javier Diaz and Elisa Diaz, commenced this case on March 18, 2013 by filing a voluntary petition for relief under Chapter 13 of Title 11 of the United States Bankruptcy Code.

2. That subsequent to the filing, Wells Fargo Bank, N.A. the holder of the First Mortgage on the Debtor's residential real property (hereafter "WFB"), filed a proof of claim indicating pre-petition mortgage arrears of $18,992.20.

3. The debtors then filed an amended plan proving for payment, through the plan to WFB the sum of $18,992.20.

4. The Debtors plan was then confirmed with such provision for WFB to be paid.

5. That during the ensuing five years, the mortgage or its servicing has apparently been transferred three times from WFB to Citibank, then from Citibank to Wilmington Savings Fund Society (hereafter "Wilmington") and then from Wilmington to Fay Servicing who is the holder

1

or servicer of the mortgage now.

6. That the Debtors have made all payments required of them under the plan and have recently made their final payment to the trustee pursuant to the terms of the plan.

7. The Debtors have also made all post-petition mortgage payments to whomever held the mortgage or its servicing.

9. Pursuant to bankruptcy rule 3002.1, the trustee has issued a notice of cure of the mortgage.

10. Fay Servicing filed a response to the Trustee's notice of cure and in such response, it has indicated that it agrees that all post-petition payments have been made by the debtors but has indicated that the post-petition arrears have not been paid and that $18,651.72 of such claim remains unpaid.

11. It appears that the trustee has only paid $270.48 of the pre-petition mortgage arrears claim of $18,992.20.

12. In the Trustee's pleadings, the trustee has indicated that he stopped paying on such claim after having received a letter from WFB, the original mortgage holder, stating that the loan had been paid in full.

13. The Debtors have done everything required of them in payments to both the trustee and the mortgage and now a discharge should be issued and the loan to Fay Servicing be deemed cured and now completely current.

## Appropriate Cure

14. The Trustee and the Debtors are in agreement that the court should issue an order finding that the mortgage is cured.

15. The Debtor's preference is that the mortgage loan actually be cured rather than be

deemed cured by order. Although if the court is not inclined to have the trustee account for the shortage to the mortgage arrears, the Debtors will accept an order deeming the arrears cured. It is the experience of Debtor's counsel that matters such as this are not handled well by Mortgagees and Debtors are concerned that either the principal balance will not be appropriately reduced or interest will be incorrectly calculated or that some Mortgagee employee won't some day conclude that the mortgage is in arrears and start proceedings or that the escrow balance will be incorrectly determined to be in shortage. There are so many ways things can go wrong and it would be greatly burdensome to the Debtors who did every asked of them in this case, to have to re-open the bankruptcy case or otherwise litigate every time an error is made and then have to seek orders that the Debtors' attorney's fees be paid by the mortgagee.

## Plan Modification

16. To review the confirmation process with regard to mortgage arrears (and other debts), it is paramount to highlight that the plan rules the day. When a chapter 13 plan is filed, the amount of mortgage arrears is stated in the plan. In every case, if the mortgagee does not agree with the amount stated in the plan, there is a specific procedure for resolution of that disagreement. The mortgagees know that if they do nothing, they are bound by the terms of the plan including the dollar amount stated in the plan required to cure the arrearage. Mortgagees spend substantial sums in order to hire counsel to file an objection to confirmation. Debtors can then choose to litigate any disputed amount, or they must amend the plan to put the plan in agreement with the numbers of the mortgagee.

17. The above procedure is not simply a customary practice or procedure, it is law. See 11 U.S.C. Section 1322(b)(5) providing for the cure of long term secured claims, U.S.C. Section 1323 providing for pre-confirmation plan modification, U.S.C. Section 1327(a) providing for the

3

binding effect of a confirmed plan, Bankruptcy Rule 3002 proving for the necessity and requirements of filing a proof of claim and Bankruptcy Rule 3002.1 (a) though (i) providing for any changes of any kind in any terms of any claim secured by the Debtor's residence.

18. In the process of confirming the plan in this case, the procedure described in paragraph 16 hereinabove was followed to a T. The Plan was filed, the mortgagee employed counsel which notified Debtor's counsel of the amount of its claim including the amount in arrears, and the Debtors filed an amended plan to come into agreement with the claim of the mortgagee and then the plan was confirmed.

19. In this case, when Wells Fargo mailed a letter to the trustee asking the trustee to disregard its claim, by then doing so and disregarding the claim, the trustee has ignored all of the well-established law and rules regarding the plan.

20. Bankruptcy Rule 3006 reads: "A creditor may withdraw a claim as of right by filing a notice of withdrawal, except as provided in this rule…" None of the exceptions to that rule are applicable here.

21. Neither Wells Fargo nor any other entity filed a notice of claim withdrawal on behalf of any entity claiming to be the holder of the mortgagee claim that had been filed in this case.

22. In effect, by ignoring the well established and codified law and rules, the trustee has unilaterally and without notice to any party whatsoever, modified the plan to not only pay essentially nothing to the mortgage arrears but to increase payment to all other claims.

23. There are of course laws and rules for modifying the plan after confirmation. See 11 U.S.C. Section 1329 and Bankruptcy Rule 2002 requiring 21-day notice to all parties and claims for a hearing to modify the plan.

24. While the trustee may have his own customs and informal procedures, he simply

cannot ignore all of the bankruptcy code and bankruptcy rules provisions regarding confirmation of a plan and later modification of the plan.

### **Equity**

25. It has been long well established that the Bankruptcy Court is a Court of Equity. See 11 U.S.C. Section 105(a).

26. Apparently the Trustee's argument is based on some notion that, although the trustee ignored the above discussed law and procedures, and regardless of the trustee being in possession of the Wells Fargo letter which the trustee kept in secret until recently, both the Debtors and the mortgagee should be held responsible for the trustee's customs because the trustee had given a notice of plan adjustment to pay unsecured creditors a larger dividend.

27. Although the trustee believes that the Debtors, their counsel and the mortgage should be held accountable for not realizing that the adjustment to payments to unsecured debts was due a secret letter to the trustee, the trustee also wants the court to hold the trustee unaccountable for the two subsequent notices of transfer of claim which were appropriately filed and served pursuant to bankruptcy rules.

28. In addition, the trustee seems to argue that he should not be held accountable for relying on a secret letter that states that the mortgage was paid in full even though there had been no motion to sell the property as required by the code and rules, and no motion to approve a loan modification as is customary when a loan is modified during chapter 13 and no motion to approve the debtor getting credit to obtain a new loan to refinance the mortgage.

29. None of the parties currently involved in this matter would disagree that Wells Fargo erred in sending the letter. With Wells Fargo no longer being a party, of those remaining, equity

would dictate that the party to be held responsible be the party in possession of the bad instrument, which, in this case, is the trustee, not the Debtors, their counsel or the current mortgagee.

30. An additional concept in equity concerns unjust enrichment. As a result of the secret letter, other unsecured creditors were paid amounts they would not otherwise have received under the confirmed plan. Ironically the Debtors had stripped a second mortgage in favor of Fifth Third Bank which was represented by counsel in the procedure to strip the second mortgage and was well aware that it would only be paid $7,230.15 as an unsecured claim in the confirmed plan. But due to the secret Wells Fargo letter, it actually received the lion's share of what should have gone to the mortgage arrears under the terms of the confirmed plan and it actually received $20.844.54 a difference of $13,614.39.

31. A chart of the unsecured claims and the amounts that should have been paid pursuant to the plan and the amounts actually received and the difference is as follows:

| Claimant | Amount of claim | Amount to be paid under plan (based on dividend of 20.99% of claim, remainder after secured and admin claims) | Amount actually paid | Amount of overpayment |
|---|---|---|---|---|
| Fifth Third Bank | 34,440.77 | 7,230.15 | 20,844.54 | 13,614.39 |
| Portfolio Recovery | 1,445.16 | 303.38 | 874.65 | 571.27 |
| Cerastes LLC | 482.54 | 101.30 | 292.05 | 190.75 |
| Fifth Third Bank (cr card) | 1,523.73 | 319.88 | 922.21 | 602.33 |
| Portfolio Recovery | 126.19 | 26.49 | 76.37 | 49.88 |
| Ecast Settlement | 192.23 | 40.35 | 116.34 | 75.99 |
| Quantum 3 Group | 7,491.68 | 1,572.73 | 4,534.18 | 2,961.45 |
| Total | 45,702.30 | 9,594.28 | 27,660.34 | 18,066.06 |

32. From the above numbers, 75% of the overpayment went to the former second

6

mortgage, Fifth Third Bank and 92% of the overpayment went to two claims, Fifth Third and Quantum.

33. Equity would dictate that the payments to the unjustly enriched claims be disgorged and returned to the trustee for re-distribution to the rightful claim for mortgage arrears. The task of recovering these payments should be small compared to the detriment to both the mortgagee and the Debtors.

34. Payments that have been made to such unjustly enriched claims were made as recently as July, 2018 as a demonstration that each of these claimants very probably remains in business and available.

### Trustee Custom and Policy Concerns

35. The trustee makes several arguments concerning its long-standing custom, practice and policy issues.

36. The burden to the trustee in changing his procedure is minimal. The trustee states that in his 19 years this is the only time that this situation has occurred. The trustee certainly could make his own business decision to continue to practice as he always have knowing that only once in tens of thousands of cases would he have to retrieve over payments to claims.

37. There are other options for the trustee to prevent this situation. Some are fairly simple:

    a. Require that any claimant that has filed a proof of claim, withdraw its proof of claim pursuant to Bankruptcy Rule 3006.

    b. Object to the claim.

    c. Inform the Debtor and their attorney of such letter claim withdrawal.

    d. Motion to modify the Plan.

38. Three times in this case, the claim of the mortgagee was transferred. Each time the mortgagees followed bankruptcy rules and procedure and filed a notice of assignment of claim

and notified the Debtor's attorney and the Debtor. Surely asking as much of the trustee is not overly burdensome. Notice is the foundation of due process and should not be considered an undue burden.

39. One must believe that the Trustee's procedure of disregarding a claim without notice to anyone is potentially dangerous. It can be imagined that an unscrupulous debtor in a case with a 100% plan could simply manufacture a letter to the trustee withdrawing any claim. When a claim is assigned, the rules require a notice of assignment of such claim to the claim holder, trustee, debtor and debtor's counsel. Such procedure is designed to prevent such potential for fraudulent assignments. If claim withdrawals can be done in secret, what is to prevent the fraud? In particular with unsecured claims who would most likely never speak up or notice the lack of payment.

## Mortgagee's Inherited Responsibility

40. As stated previously, the original mortgagee at the time of the filing of this case, was Wells Fargo. Wells Fargo is the party that sent the now infamous letter to the trustee withdrawing its claim. Since that letter, the mortgage was transferred three times with notice to the trustee and Debtor.

41. Should the court determine that no responsibility lies with the trustee, then responsibility should go to the current mortgagee. Had Wells Fargo recorded a release of its mortgage or modified the loan or taken other actions affecting the rights of the Debtors and of Wells Fargo, certainly any subsequent successor to the mortgage would be bound by such actions of Wells Fargo. If Wells Fargo did not inform such subsequent mortgagees, certainly such mortgagees would have recourse against Wells Fargo.

## **Conclusion**

42. The Debtors in this case have done everything that was required of them under the terms of the plan. They have made every post-petition mortgage payment and every payment required of them to the trustee. Not once in the entire five year term of the plan has the trustee or the mortgage filed or a motion or otherwise alleged that the Debtors did anything less than what has been required of them.

43. Debtors such as these should not be punished for the mistakes of others. The integrity of this Chapter 13 system is at stake if well intending, good faith Debtors can do everything required of them only to find that their five year long efforts failed due to the mistakes of others.

44. The Debtors cannot be held responsible for the secret letter produced by the company that once held its mortgage and sent to the trustee without notice to any other party.

45. While the trustee has been a trustee for 19 years, bankruptcy and chapter 13 have been around for many more decades and the laws and rules have been created to cover the procedures for modifying a plan. The Trustee and Wells Fargo simply cannot modify the plan without notice to the Debtors. And while it is certainly within the trustee's right to follow a procedure which he deems in his best business judgment to be practical, he does so knowing, and assuming the risk, however small, that at least this one time in his career, he may be asked to recover payments made to unjustly enriched creditors in order to make things right. It is not a large burden to the trustee and the trustee should be happy to help preserve the integrity and function of the chapter 13 system.

WHEREFORE the Debtors pray that an order be entered determining the mortgage to be cured and for such other and further relief as is deemed just and equitable in the circumstances.

                                      Respectfully submitted,
                                      Javier Diaz
                                      Elisa Diaz

                                      By   /s/ Stephen J. Costello
                                      Stephen J. Costello, attorney for the debtors

STEPHEN J. COSTELLO
COSTELLO & COSTELLO, P.C.
600 Spring Hill Ring Road, Suite 116
West Dundee, IL 60118
ARDC # 6187315
phone (847) 428 - 4544
FAX (847) 428-4694
e-mail: steve@costellolaw.com